**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **YURIN ULICES QUIROA RALDA** | **CIVIL CASE NO. 26-1960 SEC P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **TODD BLANCHE, ET AL.** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Pending before the Court is an Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction filed by Yurin Ulices Quiroa Ralda ("Petitioner") (R. Doc. 6). Having carefully considered Petitioner's submissions and the applicable law, Petitioner's Motion for TRO is **DENIED**.

### I.   BACKGROUND

Petitioner is a 21-year-old Guatemalan national. *See* R. Doc. 1 at 4. He came to the United States when he was 16 years old, and he was designated as an unaccompanied child. *See id*. He was released to his cousin in Grand Rapids, Michigan, a Michigan family court later appointed her as Petitioner's guardian. *See id*. at 11–12. On December 1, 2022, Petitioner applied for Special Immigrant Juvenile ("SIJ") status. *See id*. at 12. SIJ status is a classification awarded to minors who, according to U.S. Citizenship and Immigration Service ("USCIS"), "need the protection of a juvenile court because [they] have been abused, abandoned, or

neglected by a parent."[1] On May 11, 2023, USCIS approved Petitioner's SIJ status petition. *See* R. Doc. 1 at 13. USCIS also granted Petitioner deferred action for a four-year period, until May 11, 2027. *See id.* Petitioner's deferred action also allowed him to apply for employment authorization during the same four-year period, which he obtained to support himself. *See id.* Petitioner has not yet applied for adjustment of status to become a lawful permanent resident ("LPR") with USCIS because he is not eligible to do so. *See id.* at 13–14.

On May 26, 2023, Petitioner was involved in a car accident. *See id.* at 13. He was later convicted of a moving violation. *See id.* He was arrested on August 12, 2023, for an alleged assault. *See id.* However, Petitioner claims that he "does not know whey this is in his immigration records and is awaiting a response to his police department FOIA request." *See id.* In October 2025, Petitioner moved from Michigan to Maryland. *See id.* Shortly after this, on November 13, 2025, Petitioner was taken into immigration custody after local law enforcement contacted immigration authorities following a routine traffic stop of a vehicle in which Petitioner was a passenger. *See id.* at 13–14. He was transferred to Moshannon Valley Processing Center in Pennsylvania. *See id.* at 14.

Petitioner was placed in removal proceedings, and on February 10, 2026, the immigration judge granted the Department of Homeland Security's ("DHS") motion to pretermit his application for Asylum, Withholding of Removal, and Withholding under the Convention Against Torture. *See id.* The immigration judge ordered

---

[1] https://www.uscis.gov/working-in-US/eb4/SIJ

Petitioner removed to Ecuador, or in the alternative, Honduras. *See id*. Petitioner has never been to either of these countries, nor does he have any family or connections in either. *See id*. Petitioner then filed a motion to reopen his removal proceedings; however, the immigration denied this motion on March 23, 2026. *See id*. Petitioner has filed an appeal with the Board of Immigration Appeals, which is still pending. *See id*.

On April 9, 2026, Petitioner filed a petition for writ of habeas corpus in the Western District of Pennsylvania, but his petition was dismissed because he was still in the 90-day removal period under 8 U.S.C. § 1231(a). *See id* at 14–15. Petitioner alleges that on June 5, 2026, USCIS terminated his deferred action status and related employment authorization. *See id*. at 15. Two days later, on June 7, 2026, Immigration and Customs Enforcement ("ICE") moved Petitioner to the Alexandria Staging Facility in Alexandria, Louisiana. *See id*.

## II.    LAW & ANALYSIS

An applicant for a TRO must demonstrate each of the following:

(1) A substantial likelihood of success on the merits;
(2) A substantial threat that the movant will suffer irreparable injury if the temporary restraining order is denied;
(3) The threatened injury must outweigh any damage that the temporary restraining order will cause the non-movant; and
(4) The temporary restraining order will not disserve the public interest.

*Ali v. Williams*, No. 1:25-CV-00419, 2025 WL 3092776, at *1 (W.D. La. July 29, 2025).

A party may seek a TRO to "preserve, for a very brief time, the status quo, so as to avoid irreparable injury pending a hearing on the issuance of a preliminary injunction." *Id*. (citing Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 829 (5th

Cir. 1976)). The extraordinary relief of a temporary restraining order should not be granted unless the movant clearly carries the burden of persuasion as to all four requirements. *Id.* at *2. So, when "a party fails to meet any of the four requirements," the Court must deny the TRO. *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 607 (N.D. Tex. 2006). Likewise, granting such requests should "be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985).

Petitioner alleges that Respondents violated his procedural due process rights under the Fifth Amendment by terminating his deferred action and employment authorization without any notice or the opportunity to be heard. *See* R. Doc. 6-1 at 16–20. The procedural due process guarantee of the Fifth Amendment does not attach to every governmental action that affects a person adversely. *See Hernandez Garcia v. Mullin*, No. 25-605, 2026 WL 1266246, at *10 (E.D. Tenn. May 8, 2026). When a protected interest is at stake, courts determine the process due by weighing the private interest, the risk of erroneous deprivation under the procedures used, and the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). But the *Mathews* inquiry presupposes a protected interest. *See The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–71 (1972). "But the range of interests protected by procedural due process is not infinite." *Id.* at 570. "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). Where none exists, the balancing never begins. "In the immigration context, … 'when suspension of deportation is

4

discretionary, it does not create a protectable liberty or property interest.'" *See Hernandez Garcia*, 2026 WL 1266246, at *11 (quoting *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017)).

Here, Petitioner has no protected liberty or property interest in continued deferred action status. *See Rivera Hernandez v. Noem*, No. 9:25-CV-00326, 2025 WL 3754434, at *3 (E.D. Tex. Dec. 19, 2025) (deferred action status "can be revoked at any time.") (internal quotations and citation omitted). "Deferred action is, at its foundation, a discretionary act that by its own terms confers no legally enforceable rights on the recipient." *Hernandez Garcia*, 2026 WL 1266246, at *11. USCIS's Policy Manual explicitly states this: "If USCIS previously granted deferred action to an alien with SIJ classification in the exercise of discretion, the alien's deferred action remains valid for the authorized period, unless terminated by USCIS, on a case-by-case basis, as a matter of discretion." 6 USCIS-PM J.4(G)(1).[2] The Policy Manual then goes on to state that "USCIS reserves the right to terminate prior grants of deferred action and revoke the related employment authorization as a matter of discretion." *Id.* at (G)(2). Without a protected liberty or property interest in continued deferred action status, Respondents owed him no notice or opportunity to be heard before terminating it.

As it pertains to Petitioner's First Amendment Retaliation claim, habeas "is not available to review questions unrelated to the cause of detention." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Rather, "if a favorable determination … would not automatically entitle [the detainee] to accelerated release, the proper

---

[2] https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4.

vehicle is a § 1983 suit" instead. *Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997). As explained above, this Court determined that the termination of Petitioner's deferred action status was not unconstitutional. Thus, a favorable determination on Petitioner's First Amendment claim "would not automatically entitle [Petitioner] to accelerated release." *See id.* As such, his claim is not cognizable in habeas, and the proper vehicle is a § 1983 suit. *See id.*; *see also Hicks v. Federal Bureau of Prisons*, No. 16-3907, 2017 WL 3468368, at *2 (6th Cir. June 5, 2017) ("[The petitioner] may not use § 2241 to pursue a claim concerning a violation of his rights under the First Amendment."); *Shaw v. Dretke*, No. 03-050, 2005 WL 2179133, at *3 (N.D. Tex. Sept. 8, 2005) ("Petitioner's First Amendment claim does not implicate the fact or duration of his confinement and is, therefore, not cognizable in a habeas proceeding."). Accordingly, Petitioner's fails to establish that he has a substantial likelihood of success on the merits of his claims regarding the termination of his deferred action status.

## III.    CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (R. Doc. 6) is **DENIED**.

**THUS DONE AND SIGNED** this 10th day of June, 2026.

_____
**JERRY EDWARDS, JR.**
**UNITED STATES DISTRICT JUDGE**